**ROBERT M. DRASKOVICH, ESQ.**
NEVADA BAR NO. 6275
THE DRASKOVICH LAW GROUP, CHTD.
815 S. Casino Center Blvd.
Las Vegas, Nevada 89101
Telephone:  (702) 474-4222
Attorney for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-cr-00308-JAD-DJA |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| vs. | |
| STEPHEN THOMAS PARSHALL, | |
| Defendant. | |

COMES NOW, the Defendant, STEPHEN THOMAS PARSHALL, by and through his attorney ROBERT M. DRASKOVICH, ESQ., of THE DRASKOVICH LAW GROUP, CHTD., and respectfully submits the instant Sentencing Memorandum.

The following Memorandum is offered in addition to any evidence and/or argument adduced at a hearing on this matter. The Defendant respectfully prays that this Honorable Court to impose a sentence of 15 years upon a concurrent sentence as to each count. This Memorandum is supported by the attached Points and Authorities.

DATED this 30th day of January, 2023.

/S/ ROBERT M. DRASKOVICH

_____
ROBERT M. DRASKOVICH, ESQ.
NEVADA BAR NO. 6275
815 S. Casino Center Blvd.
Las Vegas, Nevada 89101
(702) 474-4222
Attorney for Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      Background.

Mr. Stephen Parshall ("Parshall") was charged by a Complaint filed July 29, 2020. An Indictment was filed on November 10, 2020. ECF 12. Parshall accepted full responsibility by entering a plea of guilty to Counts 1 through 4 of the indictment, without the benefit of a written plea agreement. ECF 64. Parshall entered a plea to Count One, Sexual Exploitation of Children, Count Two, Sexual Exploitation of Children, Count Three Coercion and Enticement, and Count Four Receipt and Distribution of Child Pornography. *Id*; *See also* Presentence Investigation Report ("PSR") at ¶ 1-3.

### II.     Personal History and Characteristics of Islas-Orozco.

Mr. Parshall has not previously been convicted of a felony. Additionally, he served his country by enrolling in the United States Navy. *See* PSR ¶ 153.  He served the United States Navy as a structural mechanic between 2007 and 2011. During his years of service, he was briefly deployed to the Persian Gulf, obtaining the rank of Seaman E-3. *Id.*

### III.    Legal Argument.

#### A.      18 USC 3553 Factors.

The Supreme Court has emphasized the need for individualized sentencing based not only on the crime, but on the Defendant's particular circumstances. See *Pepper v. U.S*., 131 S. Ct. 1229 (2011). It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual, and every case as unique study in the human failings that sometimes mitigate, or sometimes magnify, the crime and punishment to ensue.  *Gall v. United States*, 128 S. Ct. 586, 598 (2007), quoting *Koon v. United States* 518 U.S. 81, 113 (1996).

In *United States v. Booker*, 543 U.S. 220 (2005), the Court recognized the importance of considering a multitude of factors and not just the guidelines when imposing sentencing. Booker mandated district courts consideration of the directives set forth in 18 U.S.C. § 3553(a). There, § 3553(a) requires these federal courts to, "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

18 U.S.C. § 3553(a)(2) defines such purposes as:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a) further directs sentencing courts to consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the sentencing range as calculated in Sentencing Guidelines, Sentencing Guidelines policy statements, the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

These factors, which *Booker* held as necessary to a sentencing analysis, create a framework that focuses on the unique situation of the individual sentenced. It is this same notion that has kept the Courts from implementing a hard and fast rule as to the sentencing guidelines. The same notion has motivated defendant histories, psychological evaluations, and educational backgrounds to be required inclusions into a PSR.  Indeed, the *Booker* Court's decision made "the Guidelines effectively advisory, requiring a sentencing court to consider Guidelines ranges, see § 3553(a)(4), *but permitting it to tailor the sentence in light of other statutory concerns, see § 3553(a)."* *Booker* at 222.

The most central principle of sentencing is that "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The clause is a guidepost, an overarching principle that directs judges in the appropriate exercise of their sentencing discretion within the sentencing range authorized and consideration of factors prescribed by Congress. See *Booker,* 543 U.S. at 233 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); see also, e.g., *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (referring to clause as "overarching provision" that, post-Booker, "permits the court to tailor the sentence" to the individual defendant and crime in light of the goals of the Sentencing Reform Act of 1984) (citing *Booker,* 543 U.S. at 245-46); *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir.2008) (referring to sentencing purposes of § 3553(a) as "a tapestry of factors, through which runs the thread of an overarching principle" that is "sometimes referred to as the 'parsimony principle' ") (citing *Kimbrough*, 552 U.S. at 101); *United States v. Borho*, 485 F.3d 904, 912 (6th Cir.2007) ("[T]he guidepost for sentencing decisions post-Booker is the 'parsimony requirement[.]' "); cf. *United States v. Jones*, 460 F.3d 91, 195 (2d Cir.2006) ("Selection of an appropriate amount of punishment inevitably involves some degree of subjectivity that often cannot be precisely explained.").

### B.   Policy Considerations.

It has been found that, in general, "[i]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects." *See Michael Tonry Purposes and Functions of Sentencing, 34 Crime and Just. 1, 28 (2006).*[1] It is also indicated that: "for many crimes including drug trafficking, […] removing individual offenders does not alter the structural circumstances

---

[1] This conclusion is cited as based upon three National Academy of Science Panels, as well as survey evidence. *See Michael Tonry Purposes and Functions of Sentencing, 34 Crime and Just. 1* at 28-29 for further internal citation.

conducing to the crime. [...] [E]ven when one ignores all those considerations, the idea that increased penalties have sizable marginal deterrent effects requires heroic and unrealistic assumptions about "threat communication," the process by which would-be offenders learn that penalty increases have been legislated or are being implemented." *Id* at 29.

Likewise, it has been found that "rehabilitation looks to be a considerably more viable strategy [...] than it did during the closing decades of the twentieth" century." *Id* at 33. The author continues:

> "Evidence is accumulating from many sources-individual evaluations, meta-analyses (e.g., Lipsey and Landenberger 2006; Mitchell, MacKenzie, and Wilson 2006), literature reviews (e.g., Gaes et al. 1999; U.S. Surgeon General 2001), and practical experience-that well-managed, well-targeted programs can reduce participants' probability of reoffending. A wide range of programs, including drug treatment, anger management, cognitive-skills programs, sex offender treatment, and various educational- and vocational-skills programs have been shown to reduce reoffending (Gaes et al. 1999). A report from the English Home Office, which underpinned a massive reorganization of the English criminal justice system mandated by the Criminal Justice Act of 2003, concluded that "a reasonable estimate at this stage is that, if the [treatment] programmes are developed and applied as intended, to the maximum extent possible, reconviction rates might be reduced by 5-25 percentage points (i.e. from the present level of 56 percent within two years to (perhaps) 40 percent)" (Halliday 2001, p. 7). The most recent meta-analysis of the effects of cognitive-behavioral programs concluded that, on average, they reduced reoffending by 27 percent (Lipsey and Landenberger 2006). The proliferation of drug courts and prisoner reentry programs in the United States bears witness to the widely shared perception that some things work." *Id*.

Applying this research, it is indicated that "rigid sentencing policies obstruct efforts to prevent crime through rehabilitation for offenders." *Id*.

Elsewhere, Congress has seen fit to require the sentencing court to also recognize that: "if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."** 18 U.S.C. § 3582(a). "Matters such as age, education, mental or emotional condition, medical

condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. These are, however, matters that § 3553(a) authorizes the sentencing judge to consider." *Rita v. U.S.*, 551 U.S. 338, 364-65 (2007)(internal citations omitted).

Judges have recognized that the Court itself must determine what factors are relevant at sentencing beyond those contained in the sentencing guidelines: "[i]ndeed, the drafters of the Guidelines regime envisioned an important role for judges in articulating what those factors might be. As judges applied the Guidelines, they were supposed to highlight issues and concerns that the Guidelines had not addressed, in effect, to create a common law of sentencing in the interstices of the Guidelines. […] In short, the drafters understood that fairness in the individual case meant something other than rote application of the Guidelines." *U.S. v. Jaber*, 362 F. Supp. 2d 365, 373 (D. Mass. 2005).

### C.   The Appropriate Sentence for Parshall.

#### i.   Acceptance of Responsibility.

Parshall's acceptance of responsibility in this case is unusual and warrants extraordinary weight at sentencing. Most defendants accept responsibility only in exchange for corresponding promises from the Government. In this case, Parshall accepted responsibility by pleading guilty to all counts without any plea agreement and without the assurances of formal promises from the Government. As the Probation Office found, the defendant clearly accepted responsibility and assisted authorities via his cooperation in establishing his own misconduct.

#### ii.   The Possibility of Treatment and Rehabilitation.

Undoubtedly, sexual offenses against children are amongst the most severe crimes and are not excused by any relationship to mental illness.   With that said, an appropriate consideration for sentencing is the potential for possible treatments, upon release, of mental

health disorders which played a role in the decisions to commit the underlying offenses. American medical professionals classify pedophilic conditions under the DSM-5 as diagnosed mental disorders:

> "Pedophilic disorder (PeD) is defined by the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5),* as a persistent sexual attraction to prepubescent children that results in distress or negative consequences PeD is one of several paraphilic disorders listed in DSM-5, all characterized by atypical sexual interests causing distress or impairment to the individual or risk to harm for others. Building on the clinical term 'hypersexuality', the conceptualization of hypersexual disorder was proposed in 2010 for the clinical phenomenon of increased sexual preoccupation and compulsive sexual behavior that was experienced as out of control and associated with significant distress or impairment."[2]

As these are in part psychological conditions or orders, they may, like other such orders, respond to extensive treatments, which renders such conditions potentially mitigated in part by advancing forms of treatment:

> "As in other mental disorders, this may enable individualized pharmacological treatment plans, taking into account components of sexuality (e.g. high libido, compulsivity, anxiety-driven/sex as coping), medical and psychiatric comorbidity, adverse effects and patient preferences."[3]

Here, although Mr. Parshall has plead guilty to these several serious offenses, the Court may consider that he has never before had a felony offense or been imprisoned. For that same reason, the extremity of his mental condition has never been subject to any of these potential treatments. A sentence of 15 years, concurrent, in this case, would permit the defendant to serve a lengthy sentence and then be released on high supervision which would undoubtedly require

---

[2] Pharmacological Treatment for Pedophilic Disorder and Compulsive Sexual Behavior Disorder: A Review. Published 2022 Apr 12, obtained from the National Library of Medicine.

[3] *Id.*

such treatments which would be of benefit to the defendant and target his mental disorders which contributed to his decisions to commit these offenses.

### iii.     Mitigating Facts in Life History.

As noted above, the defendant has not previously been convicted of a felony. Additionally, he served his country by enrolling in the United States Navy. *See* PSR ¶ 153. He served the United States Navy as a structural mechanic between 2007 and 2011. During his years of service, he was briefly deployed to the Persian Gulf, obtaining the rank of Seaman E-3. *Id.*

### iv.     Summary.

Parshall will, by virtue of the mandatory minimum sentences in this case, spend a long time behind bars for his conduct. He has accepted full responsibility. His lack of prior felony convictions and over minimal interaction with the criminal justice system (mostly misdemeanor offenses) meant that his extreme mental disorder, contributing to his conduct, was never identified or treated through proper systems or court supervision. Per the above, such conditions, although always criminal, may be subject to treatment upon release which can, combined with supervision, reduce the risk of recidivism if the defendant is released. Finally, Mr. Parshall did have some mitigating life history, such as choosing to serve his country in the United States Navy.

For each of these reasons, Parshall respectfully requests the Court impose a sentence of 15 years in custody, followed by high level supervised release, via a concurrent sentence upon Counts 1 through 4.

DATED this 30th day of January, 2023.

/s/ Robert M. Draskovich
_____
ROBERT M. DRASKOVICH, ESQ.
Nevada Bar No. 6275
Attorney for Defendant